STATE OF NEBRASKA, APPELLEE, v. DOUGLAS E. METZGER, APPELLANT.

319 N.W.2d 459

Filed May 14, 1982. No. 81-723.

Dennis R. Keefe, Lancaster County Public Defender, and Dorothy A. Walker, for appellant.

John C. McQuinn II, Assistant City Prosecutor, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Douglas E. Metzger, was convicted in the municipal court of the city of Lincoln, Nebraska, of violating § 9.52.100 of the Lincoln Municipal Code. The judgment was affirmed by the District Court for Lancaster County, Nebraska, and Metzger has appealed to this court. For reasons set out below, we reverse and dismiss.

Metzger has raised several alleged errors. There is, however, a threshold question which we must address and which is dispositive of the entire matter. According to the evidence, Metzger lived in a garden-level apartment located in Lincoln, Nebraska. A large window in the apartment faces a parking lot which is situated on the north side of the apartment building. At about 7:45 a.m. on April 30, 1981, another resident of the apartment, while parking his automobile in a space directly in front of Metzger's apartment window, observed Metzger standing naked with his arms at his sides in his

apartment window for a period of 5 seconds. The resident testified that he saw Metzger's body from his thighs on up.

The resident called the police department and two officers arrived at the apartment at about 8 a.m. The officers testified that they observed Metzger standing in front of the window eating a bowl of cereal. They testified that Metzger was standing within a foot of the window and his nude body, from the mid-thigh on up, was visible.

The pertinent portion of § 9.52.100 of the Lincoln Municipal Code, under which Metzger was charged, provides as follows: "It shall be unlawful for any person within the City of Lincoln . . . to commit any indecent, immodest or filthy act in the presence of any person, or in such a situation that persons passing might ordinarily see the same."

Metzger argues that nudity, per se, is not obscene and is a form of free expression guaranteed by the first and fourteenth amendments of the U.S. Constitution, citing *Schad v. Mount Ephraim,* 452 U.S. 61, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981). We need not, however, address that issue in this case. The more basic issue presented to us by this appeal is whether the ordinance, as drafted, is so vague as to be unconstitutional. We believe that it is. There is no argument that a violation of the municipal ordinance in question is a criminal act. Since the ordinance in question is criminal in nature, it is a fundamental requirement of due process of law that such criminal ordinance be reasonably clear and definite. *Markham v. Brainard,* 178 Neb. 544, 134 N.W.2d 84 (1965); *State v. Adams,* 180 Neb. 542, 143 N.W.2d 920 (1966). Moreover, a crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. *State v. Huffman,* 202 Neb. 434, 275 N.W.2d 838 (1979); *State v. Nelson,* 168 Neb. 394,

95 N.W.2d 678 (1959). The dividing line between what is lawful and unlawful cannot be left to conjecture. *State v. Adams, supra; State v. Nelson, supra.* A citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things and providing a punishment for their violation should not admit of such a double meaning that the citizen may act upon one conception of its requirements and the courts upon another. *State v. Huffman, supra.* A statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application violates the first essential elements of due process of law. *Connally v. General Const. Co.,* 269 U.S. 385, 46 S. Ct. 126, 70 L. Ed. 322 (1925); *State v. Pocras,* 166 Neb. 642, 90 N.W.2d 263 (1958). It is not permissible to enact a law which in effect spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers may also be caught. *State v. Adkins,* 196 Neb. 76, 241 N.W.2d 655 (1976).

In *State ex rel. English v. Ruback,* 135 Neb. 335, 281 N.W. 607 (1938), this court laid down guidelines to assist in determining whether a statute defining an offense is void for uncertainty. In *Ruback* at 341, 281 N.W. at 610, we said: " 'The test to determine whether a statute defining an offense is void for uncertainty (1) is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences,

thereby devolving on the court the exercise of arbitrary power of discriminating between the several classes of acts. [Citation omitted.] (2) The dividing line between what is lawful and what is unlawful cannot be left to conjecture. [Citations omitted.]' "

In the case of *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972), the U.S. Supreme Court said: "Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids.' "

In *Papachristou, supra,* the U.S. Supreme Court declared a vagrancy statute of the city of Jacksonville, Florida, invalid for vagueness, saying at 165: "This aspect of the vagrancy ordinance before us is suggested by what this Court said in 1876 about a broad criminal statute enacted by Congress: 'It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.' "

Several other jurisdictions which have viewed ordinances with the same general intent in mind have reached similar conclusions. In the case of *State v. Sanders,* 37 N.C. App. 53, 245 S.E.2d 397 (1978), the South Carolina Court of Appeals was presented with a statute making it a misdemeanor for members of the opposite sex to occupy the same bedroom at a hotel for "any immoral purpose." In finding the ordinance too vague and indefinite to comply with constitutional due process standards, the court said at 55, 245 S.E.2d at 398: "A criminal statute or ordinance must be sufficiently definite to inform citizens of common intelligence of the particular acts which are forbidden. [Citation omitted.] G.S. 14-186 fails to define with sufficient precision exactly what the term 'any immoral purpose' may encompass. The word *immoral* is not equivalent to the

word *illegal;* hence, enforcement of G.S. 14-186 may involve legal acts which, nevertheless, are immoral in the view of many citizens. One must necessarily speculate, therefore, as to what acts are immoral. If the legislative intent of G.S. 14-186 is to proscribe illicit sexual intercourse the statute could have specifically so provided." (Emphasis in original.)

And in the case of *City of Detroit v. Sanchez,* 18 Mich. App. 399, 171 N.W.2d 452 (1969), the Michigan Court of Appeals was asked to determine whether an ordinance prohibiting ogling, insulting, annoying, following, or pursuing any person in any public street in the city was overbroad. In holding the ordinance void, the Michigan court said at 401-02, 171 N.W.2d at 453: "We are compelled to decide thus because this provision of the ordinance is unconstitutionally vague. By 'vague' we do not mean here that sort of vagueness referred to by the Supreme Court of Michigan in *People* v. *Austin* (1942), 301 Mich 456 [3 N.W.2d 841], that is, that the ordinance is put in terms which require men of common intelligence to guess as to its meaning and differ as to its application. The vagueness which invalidates this ordinance is its over-breadth of coverage rather than imprecise terminology or phraseology. The conviction cannot be sustained, because the ordinance makes criminal innocent as well as culpable conduct." See, also, *State v. Sullivan,* 298 N.W.2d 267 (Iowa 1980).

The ordinance in question makes it unlawful for anyone to commit any "indecent, immodest or filthy act." We know of no way in which the standards required of a criminal act can be met in those broad, general terms. There may be those few who believe persons of opposite sex holding hands in public are immodest, and certainly more who might believe that kissing in public is immodest. Such acts cannot constitute a crime. Certainly one could find many who would conclude that today's swimming attire

found on many beaches or beside many pools is immodest. Yet, the fact that it is immodest does not thereby make it illegal, absent some requirement related to the health, safety, or welfare of the community. The dividing line between what is lawful and what is unlawful in terms of "indecent," "immodest," or "filthy" is simply too broad to satisfy the constitutional requirements of due process. Both lawful and unlawful acts can be embraced within such broad definitions. That cannot be permitted. One is not able to determine in advance what is lawful and what is unlawful.

We do not attempt, in this opinion, to determine whether Metzger's actions in a particular case might not be made unlawful, nor do we intend to encourage such behavior. Indeed, it may be possible that a governmental subdivision using sufficiently definite language could make such an act as committed by Metzger unlawful. We simply do not decide that question at this time because of our determination that the ordinance in question is so vague as to be unconstitutional.

We therefore believe that § 9.52.100 of the Lincoln Municipal Code must be declared invalid. Because the ordinance is therefore declared invalid, the conviction cannot stand.

REVERSED AND DISMISSED.

BOSLAUGH, J., dissenting.

The ordinance in question prohibits indecent acts, immodest acts, *or* filthy acts in the presence of any person. Although the ordinance may be too broad in some respects, it would seem the defendant in this case lacks standing to raise the issue. See 16A Am. Jur. 2d *Constitutional Law* § 461 (1979). The exhibition of his genitals under the circumstances of this case was, clearly, an indecent act.

Statutes and ordinances prohibiting indecent exposure generally have been held valid. I do not subscribe to the view that it is only "possible" that such ·

conduct may be prohibited by statute or ordinance. See Neb. Rev. Stat. § 28-806 (Reissue 1979).

CLINTON and HASTINGS, JJ., join in this dissent.